**Hershel Dean ASHLOCK, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–81–593.

Court of Criminal Appeals of Oklahoma.

Sept. 12, 1983.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., Dena L. Bates, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

From his conviction in Tulsa County District Court, Case No. CRF–80–1247, wherein he was sentenced to thirty (30) years' imprisonment for Robbery with Firearms, After Former Conviction of a Felony, the appellant, Hershel Dean Ashlock, appeals.

Although the appellant raises numerous assignments of error on appeal, his first five assignments of error do not appear in his motion for new trial and thus, have not been properly preserved for review on appeal. See, *McDuffie v. State,* 651 P.2d 1055 (Okl.Cr.1982), and cases cited therein. Accordingly, we will address only those allegations which have been properly preserved.[1]

Evidence introduced at trial showed that on the evening of April 14, 1980, Howard Nix returned to his home near Tulsa, Oklahoma, at approximately 12:20 a.m. He was confronted by two men, one of whom he later positively identified as the appellant. Ashlock put a gun to Nix's head, ordered him to the floor, and bound and gagged him. Thirty minutes later, Nix's roommate, Mark Banham, also returned home, and was likewise bound and gagged by Ashlock. The two intruders then ransacked the home and fled in the victims' two automobiles. They were arrested approximately two hours later by police, who had spotted them driving one of the automobiles taken from the victims.

In his sixth assignment of error, the appellant alleges that the trial court erred in admitting photographs of property seized during a consensual search of his wife's step-grandmother's home because the State did not establish a proper predicate for its admission. Specifically, he claims that the State did not prove by clear and convincing evidence that the grandmother, Mrs. Witcher, had given her consent to the search freely and voluntarily. We do not agree.

 Initially, we note that the appellant lacks standing to question the search and subsequent admissibility of the evidence obtained as a result thereof. As the United States Supreme Court held in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), an illegal search only violates the rights of those who have "a legitimate expectation of privacy in the invaded place," *Rakas,* supra, at 143, 99 S.Ct. at 430. Furthermore, "a person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights in-

1. See Appendix.

fringed." *Rakas,* supra, at 134, 99 S.Ct. at 425.

The appellant in this case had no legitimate expectation of privacy in Mrs. Witcher's home or property, and thus, lacked standing to challenge the search.

■ In his seventh assignment of error, the appellant further asserts that the photographs of items seized at Mrs. Witcher's residence, and testimony concerning them, in the absence of competent evidence linking him to the property, were irrelevant to a determination of his guilt in the robbery. We do not agree. This Court has long held that in order to be relevant, the evidence need not conclusively, even directly, establish the defendant's guilt. Any legal evidence from which the jury may adduce the guilt or innocence of the defendant is admissible if, when taken with other evidence in the case, it tends to establish a material fact in issue. *Fahay v. State,* 288 P.2d 757 (Okl.Cr.1955). See also, 12 O.S. 1981, § 2401.

The photographs and testimony complained of depicted property alleged to have been taken during the robbery. Banham identified both the property in the photographs and property seized from Ashlock at the time of his arrest, as being his. The victim also identified Ashlock as the person who accosted him. We find that the photographs and testimony were indeed relevant, and properly admitted at trial. This assignment of error is without merit.

■ In his eighth assignment of error, the appellant contends that the trial court erred in allowing the State to prosecute him as a habitual criminal and enhance his punishment by admitting two prior convictions in the Tulsa County District Court, Cases No. CRF–73–841 and No. CRF–73–1024, as the judgments were invalid and should not have been used since he had filed a pro se application for post-conviction relief prior to trial upon which the trial court had not ruled. We disagree. This Court dealt with an identical contention made by the appellant in *Ashlock v. State,* 643 P.2d 324 (Okl. Cr.1982). For the reasons set forth in *Ash-*

*lock,* supra, this assignment of error is without merit.

■ In his ninth assignment of error, the appellant asserts that portions of the prosecutor's closing statement were highly prejudicial, and effectively denied him a fair trial. Three of the four specific remarks cited by the appellant were made subsequent to the finding of guilt by the jury, during the penalty phase of the bifurcated proceeding.

We have reviewed the record for fundamental error and find that the remarks complained of do not warrant reversal or modification. While the closing argument in this case is not a model to be followed by the prosecutors of this State, in light of the evidence presented at trial, we cannot say that these remarks determined the verdict of the jury, and we will not disturb it.

■ In his final assignment of error, the appellant asserts that accumulation of error at trial deprived him of a fair and impartial trial. As this Court has consistently held, if the previous assignments of error were without merit, then a final assignment of error claiming accumulation of error is also without merit. *Webb v. State,* 586 P.2d 78 (Okl.Cr.1978).

For the above reasons, the judgment and sentence appealed from is AFFIRMED.

CORNISH, J., concurs.

BRETT, J., concurs in result.

## APPENDIX

We have reviewed the other assignments of error for fundamental error, and find that no errors requiring reversal or modification exist.

A) In his first assignment of error, the appellant argues that the trial court erred in refusing to permit him to serve as co-counsel during the trial. We do not agree. It is readily apparent from the record that the appellant actively participated in his defense and suffered no prejudice from the trial court's ruling. Further, although an accused may proceed to trial pro se accom-

panied by advisory counsel, there is no constitutional right to representation partially pro se and partially by counsel. *Bowen v. State,* 606 P.2d 589 (Okl.Cr.1980), and cases cited therein. In the absence of a showing of prejudice, the trial court's ruling did not constitute error.

B) In his second assignment of error, the appellant asserts that evidence of a number of other crimes was improperly admitted at trial. We have thoroughly reviewed the record and find *no* instance in which any implication of his involvement in other crimes occurred outside the res gestae of the robbery. See, *Bruner v. State,* 612 P.2d 1375 (Okl.Cr.1980); *Miles v. State,* 554 P.2d 1200 (Okl.Cr.1976), and cases cited therein. Further, we find that any prejudice sustained by the appellant through the introduction of the testimony and demonstrative evidence was not only outweighed by their probative value in establishing his guilt in the armed robbery, but was properly tempered by the trial court's instruction to the jury, restricting their consideration of such evidence to the crime for which he was presently being tried. *Stowe v. State,* 590 P.2d 679 (Okl.Cr.1979); *Thompson v. State,* 624 P.2d 82 (Okl.Cr.1981).

C) In his third assignment of error, the appellant alleges that he was subjected to numerous harpoons at the hands of the State's witnesses. Specifically, he objects to the prosecutor's repeated question "Do you know the defendant?" during his examination of various police officers, to which he received affirmative responses. The record does not demonstrate that the answers were voluntarily jabbed and calculated to prejudice the appellant, or that they injected any information indicating he had been involved in other crimes. *Bruner v. State,* 612 P.2d 1375 (Okl.Cr.1980). This allegation is wholly without merit.

D) In his fourth assignment of error, the appellant argues that the trial court improperly admitted hearsay testimony, thereby committing reversible error. A thorough review of the record discloses no instance in which testimony was improperly introduced, or which, if it had not been introduced, it can be said would have affected the verdict of the jury. Even absent the testimony complained of, the evidence was sufficient to support the verdict rendered. The testimony was properly admitted.

E) In his fifth assignment of error, the appellant contends that the officers lacked probable cause to arrest him for armed robbery when he was found by Officer McGechie, and therefore, evidence seized from him as a result was improperly admitted at trial. We find this assignment of error wholly without merit. The record before us reveals that the arresting officers acted in response to a radio bulletin alerting them as to the armed robbery suspects' description and location, and thus clearly possessed probable cause to arrest the appellant. *Glidewell v. State,* 663 P.2d 738 (Okl.Cr.1983). The evidence complained of was properly admitted.